UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

IN RE:      MARION FRANCES BERNTSEN,              Case No. 06-20644

                            Debtor.                Chapter 13

**ORDER GRANTING MOTION FOR RELIEF FROM AUTOMATIC STAY AND CODEBTOR STAY, FOR *IN REM* RELIEF, AND FOR AN ORDER UNDER 11 U.S.C. § 362(d)(4)**

On March 2, 2006, creditor Universal Mortgage Corporation filed a motion for relief from the automatic stay regarding property located at 848 Geneva Lane. Specifically, the property at that location is described as follows:

> Lots 19, 20 and 21, Block 1, Indian Hills First Addition, located in Section 14, Town 1 North, Range 16 East, Village of Fontana, Walworth County, Wisconsin, more commonly known as 848 Geneva Lane. Tax Key No. SIHF 00016.

The debtor filed an objection to this motion on March 25, 2006.

The Court held a hearing on the motion on March 28, 2006. The creditor was represented by counsel at this hearing. The trustee appeared, as did the debtor and her husband (who is not a joint debtor in the current Chapter 13 petition).

<u>Relief from the Automatic Stay</u>

At the hearing, counsel for the creditor argued that the creditor's request for relief from the automatic stay was, in a sense, a request for a comfort order. Counsel argued that foreclosure on the 848 Geneva Lane property had been ordered by the state court, and that the property was no longer the property of the debtor or

1

the bankruptcy estate. The trustee agreed with this position.

All of the debtor's arguments related to the validity of the foreclosure decision by the state court. The debtor argued, among other things, that Universal Mortgage Corporation was not holder of the note on the property, that she did not agree that the signature on the original mortgage note was hers, and that she had made payments to an attorney to cure the arrearage on the mortgage but that the attorney had confiscated those funds and had not applied them appropriately.

The Court has no ability, at this stage of the proceedings, to do anything other than grant the relief requested by the creditor. On December 17, 2003 the Walworth County Circuit Court, by Hon. James L. Carlson, issued an order for judgment and judgment of foreclosure on the property in question. While the debtor (jointly with her spouse) has filed in the bankruptcy court three times prior to this current filing, the foreclosure order was issued during a time when the debtor did not have a bankruptcy matter open in federal court.[1]

More relevant to the current proceeding is the fact that on October 28, 2004–again, during a period when the debtor did not have a bankruptcy matter open in federal court–Judge Carlson issued an order confirming the sheriff's sale on

---

[1] The debtor has filed for bankruptcy on three prior occasions since January of 2002. She and her husband jointly filed case number 02-20615-jes on January 22, 2002. That Chapter 13 case was dismissed a month later, on February 26, 2002. The couple filed a second Chapter 13 petition (02-24315-jes) on April 10, 2002–they voluntarily dismissed this petition on November 18, 2002 after the court annulled the automatic stay on behalf of a creditor. The third Chapter 13 petition–again filed jointly–was filed on January 13, 2004. Case number 04-20388-svk was dismissed on June 28, 2005.

the property. As Judge Susan V. Kelley of this district noted in her April 30, 2004 decision in In re: Wescott, 309 B.R. 308, 313-314 (Bankr. E.D. Wis. 2004), Wis. Stat. § 846.13 mandates that the ownership of property vests in the purchaser upon confirmation of the sheriff's sale. While a debtor can redeem, or exert ownership rights, up until that confirmation, the purchaser owns the property upon confirmation of the sale.

Accordingly, under applicable Wisconsin law and the law of the Eastern District of Wisconsin, neither the debtor nor the bankruptcy estate have held property rights in this real estate since October 28, 2004. While it is true that the debtor appealed the order confirming the sheriff's sale, that fact is not relevant to this Court's decision. The Wisconsin Court of Appeals, District II–Judges Snyder, Brown and Nettesheim–affirmed the order confirming the sale on December 21, 2005. The property no longer belongs to the debtor, nor does it belong to the bankruptcy estate. Thus, there is no stay in effect as to this property.

Order Pursuant to 11 U.S.C. § 362(d)(4)

At the time the creditor requested relief from the automatic stay regarding this property, it also requested an order pursuant to 11 U.S.C. § 362(d)(4) of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Section 362(d)(4) is relatively new bankruptcy law, having gone into effect as part of the 2005 BAPCPA amendments. It is this provision which gives rise to the

creditor's request that the co-debtor stay be lifted[2] and that the creditor be granted *in rem* relief.

Section 362(d)(4) allows a court to terminate, annul, modify or condition the automatic stay, after notice and a hearing,

> with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, and defraud creditors that involved either —
>
> (A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or
>
> (B) multiple bankruptcy filings affecting such real property.

If recorded in compliance with applicable State laws governing notices of interests or liens in real property, an order entered under paragraph (4) shall be binding in any other case under this title purporting to affect such real property filed not later than 2 years after the date of the entry of such order by the court, except that a debtor in a subsequent case under this title may move for relief from

---

[2] The creditor has requested relief from the "co-debtor stay." The Court notes that, in this particular filing, there is only one debtor. Three provisions of BAPCPA refer to "codebtors." Section 509 describes a codebtor as "an entity that is liable ith the debtor" on a claim. Section 1201 similarly describes a codebtor as "any individual that is liable on [a] debt with the debtor." Section 1301 uses identical language to that in § 1201. Thus, in asking for relief from the stay *and* the codebtor stay, the creditor asks for relief regarding anyone who may be a co-obligor on the debtor's debts. The creditor appears to be referring to the fact that, under newly-enacted § 362(d)(4), *if* the Court finds that the debtor filed this petition to hinder or delay creditors through multiple filings, and *if* the order stating that finding is properly recorded, then the order lifting the stay is binding upon *any person*–not just the debtor–who may file for bankruptcy regarding this property in the two years following the date of the order.

4

such order based upon changed circumstances or for good cause shown, after notice and a hearing. Any Federal, State, or local governmental unit that accepts notices of interests or liens in real property shall accept any certified copy of an order described in this subsection for indexing and recording.

The Court found, at the conclusion of the March 28, 2006 hearing, that the debtor filed this current Chapter 13 petition as part of a "scheme to delay, hinder, and defraud creditors" which involved "multiple bankruptcy filings" affecting the real property. As noted in the footnote above, this is the debtor's fourth bankruptcy filing in the last four years. Two of the three previous cases were dismissed by the courts that heard them; the debtor and her husband dismissed the third voluntarily after the court granted a creditor's motion to annul the automatic stay. Each of these bankruptcy filings involved the same property. All but the first involved relatively extensive litigation by the debtor and her spouse. Yet the debtor has been unable to sustain any significant plan payments in any of the previous filings.

The current filing adds a new twist. In the three prior filings, the debtor and her husband filed together. Then, on December 15, 2005, the debtor's husband filed for Chapter 13 protection on his own. *See* Docket No. 05-45950. This Court dismissed the husband's case orally on February 22, 2006, and confirmed that dismissal in writing on March 28, 2006. On February 23, 2006–one day after the Court orally dismissed her spouse's individual Chapter 13 filing–the debtor filed this Chapter 13 matter.

The effect of the debtor and her spouse filing separate bankruptcy petitions is obvious–had they filed together on December 15, 2005, both would have been dismissed on February 22, 2006 and there would have been no stay in effect for the property in question as of that date. By filing separately, the debtor and her husband have effected an extension of the automatic stay as to all creditors through the date of this writing. It is difficult to perceive a reason for the debtor and her husband to file separately this time, other than to slow down the process and "hinder" and "delay" the creditors who have been trying, for several years now, to assert their rights.

There have been other signs of trouble. In the two cases this Court has heard, both the debtor and her husband have failed to appear for scheduled hearings. Their explanation for these failures to appear is that they were pulled over by local law enforcement because the debtor was driving with a suspended license (a contention she vehemently denies); their car was seized, along with the debtor's license and various other personal property. The debtor and her husband have argued that because they have no car or license, they are unable to make it to court unless friends are willing to bring them, and the friends often are not able to bring them on the dates set by the Court. The Court can only imagine the level of frustration the debtor and her husband feel at being thus immobilized. At the same time, the Court finds it odd that, while the debtor and her husband are unable to come to court, their pleadings often find their way to the court on the day of the

6

hearings–usually stamped "rush" and demanding a cessation of all proceedings until the debtors are able to come to court. In at least one instance, the debtor's husband has demanded that the Court provide him with transportation to and from the courthouse.

The Court also notes that the debtor's difficulties in attending scheduled court hearings did not begin with the seizure of her license in December 2005. In case number 04-20388-svk, the debtor and her spouse missed hearings scheduled by Judge Susan V. Kelley. They indicated that they were not able to attend in that case because of doctors' appointments which conflicted with the scheduled court date. When Judge Kelley gave the couple the opportunity to appear by telephone, the husband did not appear at all, and the debtor indicated that she was too ill, and her voice too raspy, to participate in the hearing.

The debtor and her husband repeatedly have asserted in their numerous filings before this and other courts that they are not lawyers, and therefore that their many–sometimes conflicting–arguments must be treated with leniency. While it is true that the form of the *pleadings* of *pro se* litigants must be viewed more leniently than the pleadings drafted by experienced lawyers, it does not follow that the Court must somehow defer to the *substance* of pleadings filed by *pro se* debtors. The debtor and her husband appear to have accumulated, over their years of litigating before the federal and state courts, a significant amount of information regarding various legal issues. While they do not always appear to understand the

7

import or meaning of the information they have gathered, they do not seem to have any difficulty articulating many varied, sometimes complex, arguments on their own behalves. In the face of such numerous, detailed filings made over such a significant period of time, the debtor and her husband can no longer seek protection behind the claim that they did not go to law school. The question is whether they are capable of articulating arguments on their own behalf–there is little question that they are.

For all of these reasons, the Court found at the hearing–and reiterates in this Order–that the debtor filed the instant petition as part of a scheme to hinder or delay the creditors. This finding can yield a broad-ranging result under the new § 362(d)(4). If, upon receipt of this Order, the creditor records the order "in compliance with applicable State laws governing notices of interests or liens in real property," then the order becomes binding "in any other case" under Title 11 which "purport[s] to affect such real property" that is filed within two years after the date of this order. In other words, if the Order is properly recorded by the creditor, anyone who files for bankruptcy protection on this particular property within the next two years will find him- or herself proceeding without the protection of the automatic stay. The only exception to this rule applies if a debtor in a case filed within two years moves for imposition of the stay based on "changed circumstances" or "good cause shown," and can demonstrate as much at a hearing after proper notice.

8

## Conclusion

For all of the reasons discussed above, the Court hereby orders the following:

1.) The motion of Universal Mortgage Company for relief from the automatic stay for the property located at 848 Geneva Lane–more specifically, Lots 19, 20 and 21, Block 1, Indian Hills First Addition, located in Section 14, Town 1 North, Range 16 East, Village of Fontana, Walworth County, Wisconsin, more commonly known as 848 Geneva Lane, Tax Key No. SIHF 00016–is hereby GRANTED;

2.) The motion of Universal Mortgage Company for an order pursuant to 11 U.S.C. § 362(d)(4) is hereby GRANTED. The Court hereby finds, pursuant to § 362(d)(4), that the debtor filed the current Chapter 13 petition as part of a scheme to hinder or delay creditors.

3.) If the creditor records this Order "in compliance with applicable State laws governing notices of interests or liens in real property," then this Order shall be binding in any other case under Title 11 purporting to affect the real property located at 848 Geneva Lane–more specifically, Lots 19, 20 and 21, Block 1, Indian Hills First Addition, located in Section 14, Town 1 North, Range 16 East, Village of Fontana, Walworth County, Wisconsin, more commonly known as 848 Geneva Lane, Tax Key No. SIHF 00016–filed not later than two (2) years after the date of entry of this Order. Under these circumstances, the Order shall be binding as to the property with regard to any person who files for bankruptcy with regard to the property.

SO ORDERED this 10th day of April, 2006.

HON. PAMELA PEPPER
United States Bankruptcy Court

cc: Marion F. Berntsen
Debtor

Brian P. Thill
Counsel for Universal Mortgage Company

Mary B. Grossman
Standing Chapter 13 Trustee

Rebecca Rogers Garcia
Assistant Chapter 13 Trustee

Office of the United States Trustee